FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 15, 2018

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JERRY C., | NO: 1:18-CV-3004-FVS |
| Plaintiff, | |
| v. | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 15, 18. This matter was submitted for consideration without oral argument. Plaintiff is represented by attorney D. James Tree. Defendant is represented by Special Assistant United States Attorney Sarah L. Martin. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, Plaintiff's Motion, ECF No. 13, is denied and Defendant's Motion, ECF No. 18, is granted.

**JURISDICTION**

Plaintiff Jerry C.[1] (Plaintiff) filed for disability insurance benefits (DIB) on November 29, 2006, alleging an onset date of August 8, 2005.[2] Tr. 104, 204, 237. Benefits were denied initially, 119-21, and upon reconsideration, Tr. 123-24. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on July 8, 2009. Tr. 53-65. On October 5, 2009, the ALJ issued an unfavorable decision. Tr. 104-13. The Appeals Council vacated the decision and remanded the matter to another ALJ on February 10, 2011. Tr. 115-18.

After a second hearing on May 24, 2012, Tr. 66-98, a different ALJ issued another unfavorable decision on June 20, 2012. Tr. 12-27. The Appeals Council denied review of the second ALJ decision on April 11, 2013, Tr. 1-4. Plaintiff filed a complaint in this Court on May 24, 2013, Tr. 1929-30, and on July 10, 2014, the

---

[1] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

[2] A subsequent Title XVI application for supplemental security income filed on May 16, 2014, was granted based on Medical Vocational Rule 202.06, which directs a finding of disability for an individual of advanced age who has a light residual functional capacity. Tr. 2385.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2

Honorable Judge Fred Van Sickle issued an order granting Plaintiff's motion for summary judgment and remanding the case for additional proceedings. Tr. 1933-50.

A third hearing before a third ALJ was held on September 28, 2015. Tr. 1860-91. The ALJ denied Plaintiff's claim on October 15, 2015. Tr. 1824-50. Plaintiff filed another complaint in this Court on December 24, 2015, Tr.2422-27, and on February 6, 2017, the Honorable Magistrate Judge John T. Rodgers issued an order granting Plaintiff's motion for summary judgment in part and remanding for additional proceedings. Tr. 2472-86.

On November 1, 2017, without further hearing and based on the evidence in the record, the ALJ issued a fourth unfavorable decision. Tr. 2385-2411. This decision became the final decision of the Commissioner on November 1, 2017. 20 C.F.R. § 404.984. The matter is now before this Court pursuant to 42 U.S.C. § 405(g).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was forty-five years old at the time of the alleged onset of disability. Tr. 204. He has a high school diploma. Tr. 247, 758. He has work experience as a coordinator at a funeral home, security guard, administrative assistant, health care driver, program coordinator, and supervisor. Tr. 91-92, 257. In August 2005, he was driving a People for People bus for work and was in an automobile accident. Tr. 71.

Within a few months of the accident, Plaintiff had stopped working and complained of low back pain, numbness in his feet, frequent and worsening headaches, shoulder pain, anxiety, sleep loss, and facial numbness. Tr. 477. By the end of 2005, he reported difficulty in most areas of physical functioning and with his memory, completing tasks, concentration, understanding, and following instructions. Tr. 254.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by

inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §

404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the

national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

**ALJ'S FINDINGS**

At step one, the ALJ found Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of August 8, 2005, through his date last insured of December 31, 2010 (the relevant period). Tr. 2388. At step two, the ALJ found that through the date last insured of December 31, 2010, Plaintiff had the following severe impairments: degenerative changes of the spine; post-concussion syndrome; cognitive disorder due to post-concussion syndrome; affective disorder (depressive disorder NOS vs. adjustment disorder, with anxiety and depression); pain disorder, with both psychological and medical factors; personality disorder; and malingering. Tr. 2388. At step three, the ALJ found that, through the date last insured of December 31, 2010, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 2389.

The ALJ then found that through the date last insured of December 31, 2010, Plaintiff had the residual functional capacity to perform light work with normal breaks, with the following additional limitations:

> The claimant could occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. The claimant could frequently balance. The claimant could occasionally stoop, kneel, crouch, and crawl. The claimant needed to avoid concentrated exposure to hazards.

The claimant was able to understand, remember, and carry out simple tasks. The claimant could perform work where contact with the general public was not an essential element of any task; however, occasional, incidental contact was not precluded.

Tr. 2391-92.

At step four, the ALJ found that, through the date last insured, Plaintiff was unable to perform any past relevant work. Tr. 2409. After considering the testimony of a vocational expert and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found there were other jobs that existed in significant numbers in the national economy that Plaintiff could have performed through the date last insured, such as basket filler, assembler, and bottle line attendant. Tr. 2410. Therefore, at step five, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from August 8, 2005, the alleged onset date, through December 31, 2010, the date last insured. Tr. 2410.

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying disability income benefits under Title II of the Social Security Act. ECF No. 13. Plaintiff raises the following issues for review:

1.      Whether the ALJ failed to follow this Court's remand order; and

2.      Whether the ALJ failed to properly consider the medical opinion evidence.

ECF No. 13 at 1.

**DISCUSSION**

**A.    Law of the Case**

Plaintiff contends the ALJ erred by failing to follow the February 6, 2017, order

of Magistrate Judge Rodgers.  ECF No. 12 at 13.  The law of the case doctrine

generally prohibits a court from considering an issue that has already been decided by

that same court or a higher court in the same case.  *Stacy v. Colvin*, 825 F.3d 563, 567

(9th Cir. 2016) (citing *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir.

2012)).  The rule of mandate is similar, but provides that a district court which has

received a mandate from an appellate court cannot vary or examine the mandate

except to execute it.  *Stacy*, 825 F.3d at 567 (citing *Hall*, 697 F.3d at 1067).  The

district court may, however, "decide anything not foreclosed by the mandate."  *Stacy*,

825 F.3d at 567 (quoting *Hall*, 697 F.3d at 1067).  A district court may reexamine any

issue on remand that is not inconsistent with a mandate.  *Stacy,* 825 F.3d at 568.  The

law of the case doctrine and the rule of mandate both apply in the social security

context.  *Id.* at 567.

Plaintiff asserts that, "[t]he ALJ violated the law of the case and the rule of

mandate by failing to credit the opinions of Dr. Muscatel and [Dr.] Drew, obtain

vocational testimony to determine whether the limitations identified by Dr. Muscatel

in 2007 were disabling, and assess whether the emotional sequelae identified by Dr.

Drew resolved with treatment and allowed Corral the ability to return to substantial

gainful activity." ECF No. 13 at 12-13 (citing Tr. 2480, 2482). Plaintiff also contends the Court provided "specific instructions" and:

> gave a very specific order instructing the ALJ to obtain vocational expert testimony to determine whether the limitations identified by Dr. Muscatel were disabling (Tr. 2480) and whether Corral's inability to perform competitive work found by Dr. Drew persisted despite treatment (Tr. 2482). In clear violation of the rule of mandate the ALJ failed to obtain any vocational testimony or make a finding about the effects of treatment on Corral's functioning. Instead, the ALJ took yet another stab at completely re-evaluating the medical evidence from Dr. Muscatel and Dr. Drew.

ECF No. 13 at 13.

The best source of the Court's instructions is the Court's own February 6, 2017 order. Tr. 2472-86. With regard to Dr. Muscatel's opinion, the Court found:

> [S]imilar to this Court's prior determination, the ALJ failed to provide a legally sufficient reason to support her rejection of Dr. Muscatel's 2007 opinion. Despite this being the second finding by this Court that the ALJ failed to properly address Dr. Muscatel's 2007 opinion, the record fails to include a vocational expert opinion that a residual functional capacity drawn from Dr. Muscatel's 2007 opinion resulted in an inability to perform work. Therefore, remand for additional proceedings will be necessary in this case.

Tr. 2480. Regarding Dr. Drew's opinion, the Court found:

> As such, the ALJ failed to provide a legally sufficient reason for giving Dr. Drew's opinion lesser weight. Even if Dr. Drew's opinion that Plaintiff was not able to return to work and would need additional treatment to be able to try to return to work, Tr. 1630, were given controlling weight, there would still be a need to determine whether Plaintiff's impairments improved with treatment and if so, when those improvements resulted in the ability to return to substantial gainful activity. As such, this Court deems the most appropriate means to address the ALJ's error is to remand this case for further proceedings.

Tr. 2482.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11

In both instances, the Court found that the ALJ's October 2015 reasons for rejecting Dr. Muscatel's and Dr. Drew's opinions were legally insufficient. However, in neither instance did the Court direct that the opinions be credited as true on remand. The Court's instructions on remand were:

> In this case, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated. Further proceedings are necessary for the ALJ to properly weigh the medical opinions in the file and, in light of the new medical analysis, make a new determination regarding Plaintiff's subjective complaints.

Tr. 2486. To "properly weigh the medical opinions in the file" and make a "new medical analysis" is a broad instruction.

The Court made this clear by stating, "[s]ince this case is being remanded for the ALJ *to readdress the above medical opinions*, the Court will not address whether the ALJ's reasons were legally sufficient to give Dr. Brown's opinion lessor [sic] weight. On remand, the ALJ *shall additionally reevaluate* Dr. Brown's opinion." Tr. 2484 (emphasis added). Moreover, in declining to evaluate the ALJ's credibility finding, the Court stated, "in light of the case being remanded for the ALJ *to address the medical source opinions in the file*, a new assessment of Plaintiff's subjective symptoms statements is necessary." Tr. 2485 (emphasis added). There is no basis to find a mandate or instruction other than those explicitly articulated by the Court, and this Court concludes the February 2017 decision of the Court does not direct that the opinions of Dr. Muscatel and Dr. Drew be credited.

Here, as in *Stacy*, the order "must be read holistically." 825 F.3d at 568. While the Court referenced the lack of a vocational expert opinion incorporating the limitations assessed by Dr. Muscatel, Tr. 2480, and the need to consider whether treatment improved Plaintiff's condition if Dr. Drew's opinion were given controlling weight,[3] Tr. 2482, these references do not implicate the law of the case or a mandate. The plain language of the statements indicates that they are not specific instructions, and the statements are not accompanied by directions to credit the opinions. By reading the order as a whole, it is apparent that the Court intended for the ALJ to reevaluate the medical evidence, which is precisely what she did.

**B.  Medical Opinions**

Plaintiff contends the ALJ improperly discounted the medical opinions of examiners Richard H. Drew, Ph.D., and Kenneth Muscatel, Ph.D., and improperly weighed other psychological opinions in the record.  ECF No. 13 at 16-24.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who

---

[3] Further supporting the conclusion that Dr. Drew's opinion was not credited by the Court is the language indicating that "[e]ven if" the opinion were granted controlling weight, remand was required.  Tr.2482.  "Even if" indicates that no mandate or instruction to credit the opinion was issued.

review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

1. *Richard H. Drew, Ph.D.*

Plaintiff contends the ALJ improperly rejected the opinion of Dr. Drew, who completed a neuropsychological evaluation in November 2008. ECF No. 13 at 16-21; Tr. 1621-31. Dr. Drew diagnosed cognitive disorder due to post-concussion

syndrome with symptoms including depression and somatic focus. Tr. 1629. He opined that Plaintiff demonstrates symptoms such as: (1) impaired concentration and cognitive tracking; (2) reduced balance; (3) reduced visual spatial and constructional skills; (4) reduced receptive and expressive language skills; and (5) impaired memory. Tr. 1629. Dr. Drew found it questionable whether Plaintiff would be able to return to employment due to his residual cognitive deficits and the emotional sequelae of his closed head injury. Tr. 1631.

The ALJ gave partial weight to Dr. Drew's opinion. Tr. 2403-04. The ALJ gave significant weight to Dr. Drew's opinion about Plaintiff's residual cognitive functioning, including the finding that Plaintiff could perform work that did not require the critical level of attention and multitasking demanded by his previous work as a commercial driver. Tr. 2405. The ALJ found this portion of Dr. Drew's opinion was supported by testing and consistent with other neuropsychological tests in the record, as well as with Plaintiff's activities. Tr. 2405.

The ALJ gave little weight to Dr. Drew's opinion that Plaintiff's "emotional sequelae" required additional treatment and was Plaintiff's primary barrier to employment. Tr. 2405. Because Dr. Drew's opinion was contradicted by the opinion of the medical expert, Dr. Winfrey, Tr. 2263-73, the ALJ was required to provide specific and legitimate reasons for rejecting that portion of Dr. Drew's opinion. *Bayliss*, 427 F.3d at 1216.

The ALJ rejected Dr. Drew's impression regarding Plaintiff's emotional sequelae because he relied heavily on Plaintiff's self-report. Tr. 2404. A physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted. *Bayliss*, 427 F.3d at 1217; *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999); *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). The ALJ noted that in concluding that Plaintiff could not return to work due to emotional problems caused by his head injury, Dr. Drew relied on: (1) Plaintiff's report that a job at a medical office ended because of emotional and pain-related issues; (2) Plaintiff's subjective responses on the Beck Depression Inventory and Beck Anxiety Inventory, indicating moderate depression and anxiety; and (3) Plaintiff's and his wife's report that he experienced significant emotional lability, with anxiety, frustration, impatience, irritability, depression, and somatic focus. Tr. 2404 (citing Tr. 1653-55). Although the ALJ made a properly supported finding regarding the unreliability of Plaintiff's symptom complaints overall which is not challenged by

Plaintiff,[4] the ALJ also gave three specific reasons for finding Plaintiff's symptom reports to Dr. Drew unreliable. Tr. 2404-05.[5]

---

[4] An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is reliable. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). Here, there was evidence of malingering, but the ALJ also supplied specific, clear and convincing reasons for finding Plaintiff's physical and mental symptom complaints unreliable. Tr. 2392-2401.

[5] Plaintiff contends *Bayliss* does not apply because in addition to Plaintiff's self-report, Dr. Drew took into account a clinical interview, his observations, a review of records, and numerous tests. ECF No. 19 at 5. However, the ALJ accurately identified the evidence cited by Dr. Drew as the basis of his assessment of Plaintiff's emotional condition. Tr. 1653, 2404. The ALJ rejected only a portion of Dr.

First, the ALJ found Plaintiff's self-report regarding his mental symptoms is not fully reliable based on evidence of malingering, disability conviction, and symptom magnification. Tr. 2404. The ALJ cited detailed records of symptom magnification, questionable effort, malingering, and disability conviction which constitutes substantial evidence. Tr. 2397-2401. Plaintiff does not challenge that finding, and it is a reasonable basis upon which to question Plaintiff's symptom statements to Dr. Drew.

Second, the ALJ found Plaintiff's and his wife's complaints to Dr. Drew about his mental health are inconsistent with the medical record and treatment notes. Tr. 2404-05. The ALJ noted that from 2005 through 2010, records reveal only sporadic complaints of depression and anxiety and no counseling, medication, or other mental health treatment. Tr. 2404. Plaintiff was discharged from treatment by Dr. Thompson because he failed to comply with treatment, and Dr. Thompson did not believe he was invested in psychotherapy. Tr. 1210, 2404. The ALJ found that if Plaintiff's depression or anxiety were as chronic and severe as reported to Dr. Drew, he would have made greater effort to seek treatment. Tr. 2404.

Plaintiff contends the ALJ should not have considered Plaintiff's failure to seek consistent treatment for his emotional problems. ECF No. 13 at 20. Where the

---

Drew's opinion, and that portion was reasonably determined to be based heavily on Plaintiff's self-report.

evidence suggests lack of mental health treatment is part of a claimant's mental health condition, it may be inappropriate to consider a claimant's lack of mental health treatment. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). However, when there is no evidence suggesting a failure to seek treatment is attributable to a mental impairment rather than personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the level of complaints. *Molina*, 674 F.3d at 1113-14. Plaintiff points to no evidence suggesting that Plaintiff's failure to seek or follow through with treatment is attributable to his mental health condition. As noted by Defendant, Plaintiff was able to follow through with his worker's compensation claim, speech therapy, and chiropractic care. ECF No. 18 at 11. The ALJ's consideration of Plaintiff's failure to pursue mental health treatment was therefore reasonable in this case.

Third, the ALJ found that Plaintiff's and his wife's descriptions of frequent emotional lability, anxiety, depression, frustration, and irritability are inconsistent with the treatment notes from 2006 through 2010. Tr. 2404. The ALJ noted Plaintiff was regularly observed to be pleasant, appropriate, and in no visible distress, Tr. 480, 503, 510, 620, 622, 627, 771-804, 1190, 1783, 1791, and when asked about depression or anxiety, Plaintiff typically endorsed only mild symptoms, Tr. 512, 1199, 1237, 2257. Tr. 2404.

Additionally, the ALJ noted that in contrast to Plaintiff's and his wife's complaints to Dr. Drew about his mental health symptoms, Tr. 1654, Plaintiff reported

he loves to meet people, being around old people, visiting, getting together with family for barbecues, and watching movies with friend or family, Tr. 1230. Tr. 2404. In April 2008, it was noted that Plaintiff "shines" while volunteering with seniors at an adult care facility, he made many of the residents laugh, and they looked forward to his presence. Tr. 1537, 2404-05. All of these findings were reasonably determined by the ALJ to be inconsistent with Plaintiff's and his wife's report to Dr. Drew regarding his various emotional symptoms.[6] It also reasonably follows that Dr. Drew's finding that Plaintiff's emotional sequelae prevent him from employment is therefore less reliable.

Plaintiff contends that his "heightened emotionality was routinely noted by evaluators, particularly when he was required to perform cognitive tasks." ECF No.

_____

[6] A third reason given by the ALJ for discrediting Plaintiff's complaints to Dr. Drew is that his pain complaints are out of proportion to the objective findings, inconsistent with his irregular use of pain medications, and undermined by evidence of symptom magnification. Tr. 2405 (citing Tr. 2392-401). The ALJ observed that Dr. Drew appropriately deferred the issues of physical trauma and pain-related behavior to Plaintiff's treating physicians. Tr. 1655, 2405. Although the ALJ's assessment of Plaintiff's pain complaints to Dr. Drew is supported by substantial evidence, his complaints of pain due to physical problems are not at issue in weighing Dr. Drew's opinion since Dr. Drew deferred consideration of them.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 20

13 at 19-20 (citing Tr. 513, 604, 1190, 1626, 1711, 1712, 2219, 2562).  While Plaintiff

cites Dr. Thompson's finding that Plaintiff presented "with an overemotional style . . .

which at times may overwhelm his ability to problem-solve effectively," Dr.

Thompson found Plaintiff experienced only mild anxiety and depression.  Tr. 512-13.

Similarly, Plaintiff cites Dr. Thompson's statement that he is "prone to emotional

overload," but Dr. Thompson indicated that only meant he should not work with

"aggressive and verbally abusive clients."  Tr. 604.  Dr. Thompson opined that

Plaintiff could be effective in a work setting with clients who were not hostile.  Tr.

604.  Plaintiff cited Dr. Duvall's observation that Plaintiff's "affect ranged fairly

widely" and noted that he was serious, somber, and wept, but did not appear

melancholy.  Tr. 1726.  However, Dr. Duvall found that Plaintiff was malingering and

his exam results were not credible.  Tr. 1729-30.  None of these findings ultimately

support the disabling level of emotional sequelae opined by Dr. Drew.

     Plaintiff also cited a statement by Patricia Harris Brown, Psy.D., that Plaintiff's

emotions were labile.  Tr. 2562.  The ALJ gave little weight to Dr. Brown's opinion,

in part because Plaintiff's exam findings and self-report were unreliable.  Tr. 2408.

Similarly, the ALJ reasonably gave less weight to Dr. Muscatel's 2007 opinion, which

includes a statement that Plaintiff became "tearful and emotional" despite a normal

affect.  Tr. 1190; *see infra*.  Other findings cited by Plaintiff include the note by

physician Dr. Ellison that Plaintiff's affect was labile, tense, and depressed, Tr. 1712,

and a note by therapist Laurie Jones that Plaintiff's affect was labile and his mood was

depressed. Tr. 2219. A few instances of emotional lability or emotional behavior does not reasonably qualify as "routine" findings of lability, especially in contrast to the numerous records cited by the ALJ indicating relatively normal presentation and mild symptoms.

Furthermore, the ALJ did not find that Plaintiff has no mental health limitations; in fact, the ALJ found that Plaintiff's severe impairments include affective disorder (either depressive disorder or adjustment disorder with anxiety and depression). Tr. 2388. Documentation of some lability or emotional behavior does not mean that Plaintiff's complaints about symptoms to Dr. Drew are well-supported in the record, nor does it mean that Plaintiff was disabled by those symptoms. It is the ALJ's duty to resolve conflicts and ambiguity in the medical and non-medical evidence. *See Morgan*, 169 F.3d at 599-600. The ALJ's point is reasonably supported by substantial evidence that Plaintiff's and his wife's descriptions of frequent emotional lability, anxiety, depression, frustration, and irritability, and Dr. Drew's finding that Plaintiff's emotional problems were his primary barrier to employment are inconsistent with the record overall.

Plaintiff also contends the ALJ improperly considered the statements of Plaintiff's wife as part of Plaintiff's self-report "instead of independent observations that shaped Dr. Drew's opinion." ECF No. 13 at 17. The ALJ found that, "[t]he allegations of the claimant and his wife, however, are inconsistent with his activities and treatment record from 2005 through 2010, which documents sporadic complaints,

no mental health treatment, noncompliance with treatment recommendations, and benign objective findings during appointments." Tr. 2405. The ALJ supported this finding with detailed citations to the record. Tr. 2397-2401. As noted *supra*, the ALJ's reasons for finding Plaintiff's symptom complaints unreliable are supported by substantial evidence. The reasons cited by the ALJ apply equally to the allegations of Plaintiff's wife, and are germane reasons supported by substantial evidence for finding her statements unreliable, as well.[7] Since the ALJ properly found the observations of Plaintiff's wife to be unreliable, the ALJ's point that Dr. Drew's opinion was based on unreliable symptom complaints by Plaintiff and his wife is supported by substantial evidence.

Plaintiff also contends the ALJ improperly considered the subjectivity of the Beck Inventory administered by Dr. Drew. ECF No. 13 at 17-18. As noted *supra*, the ALJ found that Dr. Drew relied in part on the results of the Beck Depression Inventory and Beck Anxiety Inventory in determining that Plaintiff could not return to work due to his emotional problems. Tr. 2404 (citing Tr. 1653-54). According to the ALJ, "[t]he results from the BAI and the BDI are based on a person's subjective responses to items on a symptom checklist." Tr. 2404. Plaintiff contends the ALJ

---

[7] As a lay person, Plaintiff's wife is an "other source" under the regulations. 20 C.F.R. § 416.913(d) (2013). Thus, her statements may be rejected with germane reasons. *See Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

"went outside of her expertise in singling out the Beck Inventories for being too subjective." ECF No. 13 at 17. Plaintiff cites a Wikipedia article regarding the Beck Depression Inventory in asserting the BDI is "one of the most widely used psychometrics tests for measuring the severity of depression." ECF No. 13 at 17 (quoting WIKIPEDIA, *Beck Depression Inventory*[8]). However, the Court notes the same Wikipedia entry also states, "[t]he BDI suffers from the same problems as other self-report inventories, in that scores can be easily exaggerated or minimized by the person completing them." Given the finding of malingering, and the unchallenged and well-supported finding that Plaintiff's symptom complaints are not reliable, the ALJ's conclusion about the results of the BDI and the BAI in this instance is reasonable.

## 2.    *Kenneth Muscatel, Ph.D. – 2007 Opinion*

Plaintiff contends the ALJ improperly rejected Dr. Muscatel's April 2007 neuropsychological report. ECF No. 13 at 21-22; Tr. 1188-1201. Dr. Muscatel diagnosed cognitive disorder NOS with traumatic brain injury and depression; depressive disorder NOS with mild to moderate symptoms; and somatization disorder/psychogenic symptoms. Tr. 1201. Dr. Muscatel concluded:

> [Plaintiff's] job options are limited due to his cognitive, academic and intellectual deficiencies. His language skills, including verbal fluency, articulation skills, naming and other expressive verbal skills represent

---

[8]https://en.wikipedia.org/w/index.php?title=Beck_Depression_Inventory&oldid=8324 42206 (version 01:33, March 26, 2018)

a barrier as well. He probably could work in a routine environment that was within his physical capacities but his attentional efficiency is substantially reduced and would represent an issue for many jobs.

Tr. 1200. The ALJ gave little weight to Dr. Muscatel's 2007 opinion.

Because Dr. Muscatel's opinion was contradicted by the opinion of Dr. Winfrey, Tr. 2263-73, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Muscatel's opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found that Plaintiff's uneven effort during the exam compromised Dr. Muscatel's findings. Tr. 2406. Evidence that a claimant exaggerated his symptoms is a specific, legitimate reason to reject a doctor's conclusions. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). On the CTAM-V7.1, a test of concentration and effort administered by Dr. Muscatel, Plaintiff's concentration was below average but effort was adequate. Tr. 1198. On the Word Memory Test (WMT), which evaluates testing effort through a word listing learning task, Plaintiff had an impaired performance. Tr. 1198. On the Test of Memory Malingering, Plaintiff had a "poor result" on Trial 1 but an adequate result on Trial 2. Tr. 1198-99. Dr. Muscatel noted that the testing to measure Plaintiff's effort suggested "uneven effort, with particular concern on the word learning list." Tr. 1199. Dr. Muscatel later concluded that, "[i]n terms of testing effort, he was inadequate in effort on the verbal list learning task, but performed adequately on the TOMM and CTAM." Tr. 1200.

In addition, the ALJ also noted that at the time of the 2007 evaluation, Dr. Muscatel did not have the results of his 2008 evaluation. Tr. 2406. In April 2008, Dr. Muscatel evaluated Plaintiff for a second time, Tr. 2244-59, and found test results indicated "something less than low motivation but poor effort, and with possibility of malingering suggested, if not confirmed. These test results are neither representative nor helpful in determining his current status." Tr. 2258. The ALJ observed that, throughout the record, "higher test scores correlate with good effort and lower test scores correlate with poor effort." Tr. 2406 (quoting Tr. 2480). The ALJ found this and other evidence, Tr. 2395-96, suggests that Plaintiff "can present with higher cognitive function when he chooses. As such, one can reasonably question whether the attentional deficits, which Dr. Muscatel indicated was the basis for his 2007 opinion that the claimant could not work [], were likewise volitional and a true representation of his actual functioning." Tr. 2406 (citing Tr. 1200). This is a reasonable inference from the evidence.

Plaintiff observes that the April 2018 evaluation indicated lower cognitive functioning than the October 2007 evaluation, and that Dr. Muscatel did not find the April 2008 evaluation discredited his 2007 findings. ECF No. 13 at 21-22. The ALJ acknowledged that Dr. Muscatel's April 2008 report indicated that the test results from his April 2007 exam "were more representative of his neurocognitive skills and abilities," but noted that the degree of malingering, disability conviction, and lack of effort during the April 2008 evaluation rendered those results "completely useless."

Tr. 2406 (citing Tr. 2258).  The ALJ reasonably determined it follows that "uneven effort" demonstrated during the April 2007 evaluation compromised those test results at least to some degree, as well.  Tr. 2406.

Plaintiff also contends that Dr. Palmatier's findings, which were noted by the ALJ as other evidence of Plaintiff's manipulation of his cognitive presentation, Tr. 2406 (referencing Tr. 2395-96), do not contradict Dr. Muscatel's findings because Dr. Palmatier is not a specialist and did not conduct cognitive testing.  ECF No. 13 at 22. As a treating physician, Dr. Palmatier is qualified to observe and assess psychological maters, as it is well established that primary care physicians identify and treat the majority of psychiatric disorders.  *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).  As the ALJ noted, Dr. Palmatier has a treating relationship with Plaintiff, saw Plaintiff monthly over a three-year period, and he noted the discrepancies in Plaintiff's cognitive presentation during appointments.  Tr. 2403.  Plaintiff did not challenge the ALJ's assignment of significant weight  and "high level of deference" assigned to Dr. Palmatier's opinion, including the conclusion that numerous findings by Dr. Palmatier indicate symptom magnification, poor effort, and other discrepancies.  Tr. 2395-96, 2403.  Dr. Palmatier's findings constitute additional evidence supporting the ALJ's conclusion that Plaintiff is capable of manipulating his cognitive presentation, which was reasonably determined to undermine the 2007 test results procured by Dr. Muscatel based on Plaintiff's uneven effort.

Second, the ALJ found that Dr. Muscatel's evaluation was inconsistent with other evidence in the record. Tr. 2407. The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating a medical opinion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). The ALJ observed that Drs. Thompson, Clark, and Drew all conducted psychometric testing and did not question Plaintiff's effort. Tr. 2407. The ALJ noted that Dr. Thompson opined Plaintiff could be retrained in new lines of work where he would not require the critical level of attention and multitasking demanded by his past work, Tr. 520; Dr. Clark opined Plaintiff's Mini Mental Status exam results did not suggest gross cognitive impairment, Tr. 1231; and Dr. Drew opined that Plaintiff appeared to have the cognitive ability to return to some kind of employment, Tr. 1655. Tr. 2407.

The ALJ found these opinions are consistent with the conclusion that while Plaintiff could not perform detailed or complex tasks, he retained the cognitive ability to perform at least simple tasks. Tr. 2407. The ALJ determined this is also consistent with the opinions of Dr. Bailey, Dr. Mee, Dr. Palmatier, and Dr. Winfrey, as well as with Plaintiff's activities during the period at issue. Tr. 2407. Thus, Dr. Muscatel's conclusion regarding Plaintiff's cognitive ability was reasonably determined to be inconsistent with other evidence in the record.

/ / /

/ / /

### 3. Other Opinions

Plaintiff contends the ALJ gave too much weight to older and less well-supported medical opinions. ECF No. 13 at 22-24. Plaintiff asserts the ALJ should not have given significant weight to the opinions of Drs. Thompson, Bailey, Mee, Clark, and Palmatier, and should have given significant weight to the opinions of Drs. Muscatel, Drew, Olmer, "and others," which would, according to Plaintiff, "dictate a finding of disability." ECF No. 13 at 22-24.

Plaintiff argues that Dr. Thompson's opinion should not have been given significant weight because the opinion does not address Plaintiff's emotional issues and was given before Plaintiff's attempted retraining. ECF No. 13 at 22. Plaintiff further argues the opinions of the reviewing psychologists, Dr. Bailey and Dr. Mee, generated in January 2007, Tr. 1080-82, and November 2007, Tr. 1434-37, respectively, were stale since they were rendered almost four years before Plaintiff's date last insured and without reviewing evidence developed later in the record. ECF No. 13 at 22-23. However, the ALJ considered and compared all of the evidence, including the opinion of Dr. Winfrey, the psychological expert, who reviewed all of the evidence and opined that Plaintiff retained the ability to perform a job with simple tasks and simple demands in terms of judgment and decision-making. Tr. 2263-2273, 2403. The ALJ's observation that that these opinions are consistent with each other and with other evidence in the record reasonably supports the weight assigned to the opinions.

Additionally, the ALJ's consideration of the opinions of Dr. Muscatel and Dr. Drew is legally sufficient, as discussed *supra*. Plaintiff does not address the ALJ's reason for giving less weight to Dr. Olmer's opinion, which is that it was given after the date last insured and the ALJ assigned more weight to opinions formed during the period at issue. Tr. 2406-07, 2585-88. Based on the ALJ's thorough discussion of the medical opinions, this is a legally sufficient reason for giving less weight to Dr. Olmer's opinion. Lastly, the reference to "other" opinions lacks specificity. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2007) (declining to address issues not argued with specificity). Based on the foregoing, the ALJ's weighing of the opinion evidence was legally sufficient.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly,

1. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 18**, is **GRANTED**.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order and provide copies to counsel. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**DATED** November 15, 2018.

*s/ Rosanna Malouf Peterson*
ROSANNA MALOUF PETERSON
United States District Judge